## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| v. | Filed: |
| ROBBY VAN MELE, | Violation: 15 U.S.C. § 1<br>Conspiracy in Restraint of Trade |
| Defendant. | |

## <u>INFORMATION</u>

COUNT ONE
<u>Conspiracy in Restraint of Trade</u>
(15 U.S.C. § 1)

The United States charges that at all times relevant to this Information:

<u>BACKGROUND</u>

1.      The Department of Defense maintains military bases in Belgium to protect the national security interests of the United States. On behalf of the United States government, the Department of Defense enters into and funds contracts for security services with companies to protect the security of these physical locations and the safety of personnel stationed there.

2.      Security services include individual guards protecting physical buildings, mobile monitoring of certain locations, and electronic surveillance of defined areas. Individual customers, including the United States Department of Defense (the "Department of Defense"), seeking security services issued tenders and invited firms to bid on these contracts. These tenders listed the location to be guarded, the duration of the services, and the overall scope of services sought. When a company submitted a winning bid, it was selected to enter into a contract with the customer for the provision of the services sought.

## DEFENDANT AND CO-CONSPIRATORS

3.      During the period covered by this Information, ROBBY VAN MELE (the "Defendant") resided in Belgium and was employed as the Director of Operations for G4S Secure Solutions NV ("G4S"), a corporation charged elsewhere, and organized and existing under the laws of Belgium with its principal place of business in Brussels, Belgium. During the period covered by this Information, the Defendant, on behalf of G4S, was engaged in the business of providing security services to a variety of customers in Belgium.

4.      Various corporations and individuals, not made defendants in this Information, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

5.      Whenever in this Information reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## DESCRIPTION OF THE OFFENSE

6.      Beginning at least as early as Spring 2019 and continuing until as late as Summer 2020, the exact dates being unknown to the United States, the Defendant entered into and engaged in a combination and conspiracy with co-conspirators to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for contracts for the provision of security services in Belgium, including those with the United States, through the Department of Defense, and those with the North Atlantic Treaty Organization (NATO) Communications and Information Agency (the "NCI Agency"), which is funded in part by the United States. The combination and conspiracy engaged in by the Defendant and co-conspirators

was a *per se* unlawful, and thus unreasonable, restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

7.      The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendant and co-conspirators, the substantial terms of which were that they would allocate customers, rig bids, and fix prices for contracts for the provision of security services in Belgium, including certain contracts with the United States and the NCI Agency by coordinating price increases; submitting artificially-determined, non-competitive, inflated bids; and refraining from bidding for certain contracts. The objective of the conspiracy was to be awarded certain security services contracts, including those with the United States, through the Department of Defense, and those with the NCI Agency, which is funded in part by the United States, and receive payments for those contracts, including from the Department of Defense, at non-competitive, inflated prices for the duration of the contracts.

<u>MEANS AND METHODS OF THE CONSPIRACY</u>

8.      For the purpose of forming and carrying out the charged combination and conspiracy, the Defendant and co-conspirators did those things that they combined and conspired to do, including, among other things:

(a) attending meetings and engaging in discussions during which they agreed to allocate customers, rig bids, and fix prices;

(b) participating in meetings to discuss which co-conspirator would submit the winning bid on particular tenders, including those issued by the Department of Defense for locations in Belgium;

(c) communicating with each other via phone, text message, encrypted messaging applications, and email to discuss which co-conspirator would submit the winning bid on

particular tenders, including those issued by the Department of Defense for locations in Belgium;

(d) agreeing, during those meetings and communications, not to compete against each other for particular tenders, including those issued by the Department of Defense for locations in Belgium;

(e) submitting or withholding bids in accordance with the agreements reached, including to and from the Department of Defense for locations in Belgium;

(f) providing security services at collusive and non-competitive prices, including to the Department of Defense at locations in Belgium; and

(g) receiving payments for security services at collusive, non-competitive prices, including from the Department of Defense for locations in Belgium.

<u>TRADE AND COMMERCE</u>

9.      The United States solicited bids from and entered into contracts with the co-conspirators for security services provided to United States military bases in Belgium. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. interstate, import, and export trade and commerce, and that effect, in part, gives rise to this charge. The charged combination and conspiracy also had a substantial and intended effect in the United States.

10.     For example: (a) the charged combination and conspiracy prevented the Department of Defense from receiving true competition for bids on a contract for security services in Belgium; (b) the charged combination and conspiracy also caused the Department of Defense to pay non-competitive prices for security services provided at military bases and installations in Belgium; and (c) proposals, contracts, invoices for payment, payments, and other documents and items essential to the provision of security services were transmitted in foreign

trade and commerce between the co-conspirators located in Belgium and their customers located in the United States and elsewhere.

11.     The business activities of the Defendant and co-conspirators in connection with the security services contracts that are the subject of this Information were within the flow of, and substantially affected, commerce among the states and with foreign nations.

**ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.**

Dated:    September 13, 2021

_____
RICHARD A. POWERS
Acting Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

_____
JOSEPH MUOIO
Chief, New York Office

U.S. Department of Justice
Antitrust Division

_____
EYITAYO ST. MATTHEW-DANIEL
Assistant Chief, New York Office

_____
BRYAN SERINO
DINA HOFFER
KATHRYN KUSHNER
Trial Attorneys, New York Office

U.S. Department of Justice
Antitrust Division
26 Federal Plaza, Suite 3630
New York, NY 10278
Tel: 212-335-8000