UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>          v.<br><br>ROBBY VAN MELE,<br><br>                      Defendant. | Case No. 21-CR-573 (TSC) |

**GOVERNMENT'S SENTENCING MEMORANDUM
AND MOTION FOR A DOWNWARD DEPARTURE**

Defendant Robby Van Mele participated in a conspiracy to suppress and eliminate competition among Belgian security services providers in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. However, the Defendant quickly took full responsibility for his actions and provided substantial assistance to the United States. Given the Defendant's substantial assistance, and considering the relevant 18 U.S.C. § 3553(a) factors, including Van Mele's comparatively minor culpability, the Government asks the Court to impose a sentence of less than three years of probation and a fine of under $20,000.

**I.     FACTUAL BACKGROUND**

From as early as Spring 2019 and continuing until at least Summer 2020 (the "Relevant Period"), the Defendant was the Director of Operations for G4S Secure Solutions NV ("G4S"), a corporation based in Brussels, Belgium. Presentence Investigation Report ("PSR") at ¶¶ 14–15. G4S was in the business of providing security services, including staffing guards to protect buildings, mobile monitoring of certain locations, and electronic surveillance of defined areas. *Id.* at ¶¶ 13–14.

Within the Relevant Period, the Defendant participated in a conspiracy among major Belgian security services providers, the primary purpose of which was to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for certain contracts for the provision of security services in Belgium with the United States, through the U.S. Department of Defense, and with the North Atlantic Treaty Organization (NATO) Communications and Information Agency (the "NCI Agency"). *Id.* at ¶¶ 12, 15. In furtherance of the conspiracy, the Defendant engaged in discussions and attended meetings with representatives of other major security services providers. *Id.* at ¶ 15. During these discussions and meetings, agreements were reached to suppress competition for certain contracts for the provision of security services to the United States and the NCI Agency by coordinating price increases; submitting artificially determined, non-competitive, inflated bids; and refraining from bidding for certain contracts. *Id.*

Within the Relevant Period, security services were provided by one or more of the conspirator firms to the U.S. Department of Defense, and proposals, contracts, invoices for payment, payments, and other documents and items essential to the provision of security services were transmitted in foreign trade and commerce between the Defendant's employer and its co-conspirators located in Belgium and their customer located in the United States. *Id.* at ¶ 16. The conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. domestic commerce. *Id.* at ¶ 18.

II.     PROCEDURAL BACKGROUND

   A.     **Defendant Van Mele's Case**

On September 13, 2021, the United States filed a one-count Information charging Van Mele with participating in a conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for certain contracts for the provision of security services

in Belgium, including with the United States, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  ECF No. 1.  On October 18, 2021, Van Mele pleaded guilty to the Information after entering into a plea agreement with the United States.  ECF No. 7.  Sentencing is scheduled for October 20, 2025.

### B. Related Cases

***United States v. G4S Secure Solutions NV*, No. 21-CR-432 (TSC)**

Before charging Van Mele, on June 25, 2021, the United States filed a one-count Information charging his former employer, G4S Secure Solutions NV, for its role in the conspiracy.  On July 16, 2021, G4S pleaded guilty to the Information after entering into a plea agreement with the United States and was sentenced to a fine of $15 million.

***United States v. Seris Security NV, et al.*, No. 21-CR-443 (TSC)**

On June 29, 2021, a federal grand jury returned a one-count indictment charging Van Mele's former supervisor at G4S and co-conspirator, Jean Paul Van Avermaet, and three co-defendants—Seris Security NV, Danny Vandormael, and Peter Verpoort—with participating in the conspiracy described above.  Only Van Avermaet appeared; his co-defendants all remain fugitives.  On January 14, 2025, after this Court denied his motions to dismiss, Van Avermaet executed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  On May 28, 2025, this Court accepted the plea agreement and imposed the parties' agreed-upon sentence of three years of probation and a $20,000 fine.  As discussed below, Van Mele's cooperation with the Government was critical in facilitating the indictment and conviction of Van Avermaet.

*United States v. Bart Verbeeck*, No. 21-CR-574 (TSC)

On September 13, 2021—the same day it charged Van Mele—the United States filed a one-count Information charging Van Mele's former colleague at G4S and co-conspirator, Bart Verbeeck, with participating in the conspiracy. On October 18, 2021, Verbeeck pleaded guilty to the Information after entering into a plea agreement with the United States. Sentencing is scheduled for October 23, 2025.

### III.   THE RECOMMEDED SENTENCE

#### A.   The Maximum Penalties

The violation of 15 U.S.C. § 1 carries a statutory maximum penalty of:

(1)   a term of imprisonment of ten (10) years (15 U.S.C. § 1);

(2)   a fine in an amount equal to the greatest of: (1) $1 million; (2) twice the gross pecuniary gain the conspirators derived from the crime; or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

(3)   a term of supervised release of three (3) years following any term of imprisonment. If the Defendant violates any condition of supervised release, the Defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3); the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") § 5D1.2(a)(2)).

PSR at ¶ 4.  In addition:

(1)   pursuant to U.S.S.G. § 5El.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the Court may order the Defendant to pay restitution to the victims of the offense; and

(2)   pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the Defendant to pay a $100.00 special assessment upon conviction for the charged crime.

*Id.*

#### B.   The Applicable Sentencing Guidelines

To determine an appropriate sentence, the Court must first accurately calculate the Defendant's advisory Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007).

4

The Government, the Defendant, and United States Probation Officer agree on the following Sentencing Guidelines Calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2R1.1(a) | Base Offense Level | 12 |
| U.S.S.G. § 2R1.1(b)(1) | Specific Offense Characteristic | +1 |
| U.S.S.G. § 3E1.1(a) and (b) | Acceptance of Responsibility | -2 |
| U.S.S.G § 4C1.1(a) and (b) | Zero-Point Offender[1] | -2 |
| | **Total Offense Level:** | **9** |

PSR at ¶¶ 34–43. Because the Defendant has no criminal history points, he is in Criminal History Category I. *Id.* at ¶ 46. Accordingly, his Guidelines imprisonment range is four to ten months. *Id.* at ¶ 79.

The fine range is $20,000 (the Guidelines minimum fine)[2] to $1 million (the statutory maximum fine). *Id* at ¶ 102.

### C.   The Defendant's Substantial Assistance

Under Section 5K1.1 of the Guidelines, upon a motion by the Government regarding a defendant's substantial assistance, Courts may depart from the Guidelines. The Guidelines suggest that, in determining the appropriate reduction of a defendant's sentence based on substantial

---

[1] After the entry of Van Mele's guilty plea on October 18, 2021, the U.S. Sentencing Commission amended the Guidelines, effective November 1, 2023, to create the Adjustment for Certain Zero-Point Offenders under U.S.S.G. § 4C1.1. Although Van Mele entered his plea prior to the amendment, the general rule is that the Court should apply the version of the Guidelines in effect at the time of sentencing. *United States v. Gary*, 291 F.3d 30, 36 (D.C. Cir. 2002); 18 U.S.C. § 3553(a)(4)(A). Accordingly, the Government agrees with the PSR writer that Van Mele's offense level should be reduced by an additional 2 points because Van Mele meets the criteria enumerated in U.S.S.G. §§ 4C1.1(a)(1)-(10). *See* PSR at ¶ 42.

[2] The Guidelines state that "[f]or an individual, the guideline fine range shall be from one to five percent of the volume of commerce, but not less than $20,000." U.S.S.G. § 2R1.1(c)(1).

assistance, the Court may consider factors such as the Court's evaluation of the significance of the defendant's assistance (taking into account the government's evaluation); the truthfulness, completeness, and reliability of information provided by the defendant; and the nature and extent of his assistance. *See* U.S.S.G. § 5K1.1(a).

Although he is a Belgian citizen who cannot be extradited to the United States, Van Mele nevertheless quickly accepted responsibility for his actions and cooperated with U.S. investigators. He voluntarily consented to U.S. jurisdiction and pleaded guilty.

Van Mele, both directly and through his attorneys, provided detailed proffers and interviews to U.S. investigators on numerous occasions, describing the manner and means of his own and, significantly, others' involvement in the conspiracy. The information Van Mele provided about this conduct, coupled with his willingness to testify at trial, was likely critical to the indictment of separately charged defendants and to Van Avermaet's eventual decision to plead guilty. Van Mele's cooperation may also help the United States negotiate resolutions with the remaining fugitive defendants in this case.

Accordingly, as further detailed below, the Government recommends that the Court depart downward from the advisory Guidelines range pursuant to U.S.S.G. § 5K1.1.

### D. The Appropriate Sentence Considering the Section 3553(a) Factors

In light of the sentencing factors enumerated in 18 U.S.C. § 3553(a), and the Defendant's acceptance of responsibility and substantial assistance, the Government recommends that the Court impose a sentence of less than three years of probation and a fine of under $20,000.

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49 (citation omitted). The district court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49–50. "In so

doing, [the district judge] may not presume that the Guidelines range is reasonable . . . [and] must make an individualized assessment based on the facts presented." *Id*. at 50 (citation omitted). The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. The Court also must consider the history and characteristics of the defendant, the sentencing range under the Guidelines, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7).

First, the Guidelines authorize a sentence of probation for defendants that fall within Zone B of the Sentencing Table, as the Defendant here does. U.S.S.G. § 5B1.1(a)(2); U.S.S.G. § 5C1.1(c)(3). The Guidelines further state that, where a defendant receives the adjustment for certain zero-point offenders pursuant to Section 4C1.1 and his applicable guideline range is in Zone B of the Sentencing Table—both of which apply to the Defendant—"a sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1 (n.10).

Second, a sentence that includes less than three years of probation and a fine of under $20,000 will avoid unwarranted sentencing disparities. Bid-rigging conspiracies that corrupt public procurement processes are serious offenses that impact scarce public resources and undermine trust in government institutions. Here, however, Van Mele acted as a subordinate of his supervisor, Van Avermaet, to carry out the objects of a conspiracy that was entered into by Van Avermaet and two other heads of dominant firms. Van Avermaet's sentence included three years of probation and a $20,000 fine. Van Avermaet played a more senior role in the conspiracy, acted as Van Mele's supervisor during the conspiracy, pleaded guilty over three years after Van Mele did, took up significant judicial and prosecutorial resources during that time, and provided

7

less assistance to the Government than did Van Mele. The Government respectfully submits that it is therefore appropriate to impose a less severe sentence on Van Mele as compared with Van Avermaet.

Finally, a noncustodial sentence that includes less than three years of probation and a fine of under $20,000 would appropriately account for Van Mele's individual characteristics. At 59 years old, Van Mele is a first-time offender with no known criminal history. He is also a widower and sole surviving parent to a minor child residing in Belgium. PSR at ¶ 55.

### IV.   **RESTITUTION**

In consultation with U.S. victims and in light of the availability of civil causes of action, which potentially provide for a recovery of multiple actual damages, the Government does not recommend restitution for the offense charged in the Information.

### **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence of less than three years of probation and a fine of under $20,000.

Respectfully submitted,

*/s/ Dina Hoffer*
Dina Hoffer
Jena Tiernan
Kathryn Carpenter
Trial Attorneys, U.S. Department of Justice
Antitrust Division, New York Office
201 Varick St., Ste. 1006
New York, NY  10014
Telephone: (202) 476-0433